UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,          :

                               :       MEMORANDUM & ORDER

       v.                      :       20-CR-293 (WFK)

                               :

QUINCY BATTICE,                :

                               :

               Defendant.      :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 18, 2022, Defendant was convicted by a jury on five counts of a 20-count Superseding Indictment, specifically: Count 10, conspiracy to murder rival gang members, in violation of New York Penal Law ("NYPL") §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; Count 12, attempted assault with a dangerous weapon in-aid-of racketeering, in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; Count 13, attempted murder in-aid-of racketeering in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Count 14, assault with a dangerous weapon in-aid-of racketeering in violation of NYPL §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2; and Count 15, possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. Jury Verdict, ECF No. 533; *see also* Superseding Indictment, ECF No. 51. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 382 months of imprisonment, to run consecutively to any undischarged sentence from Defendant's pending Violation of Supervised Release, to be followed by 3 years of supervised release with special conditions. Defendant is required to pay a mandatory special assessment of $500.00.

## I. Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") led the investigation into Defendant and other gang associates and members for the instant offense. Presentence Investigation Report ("PSR") ¶ 11, ECF No. 604. Defendant is an associate of the Folk Nation Gangster Disciples ("GD"), a violent street gang operating out of Brooklyn, New York. PSR Addendum at 3, ECF No. 715; PSR ¶ 11; *see also* Ex. K to Defendant's Sentencing Memorandum ("Def. Mem.") at 44, ECF No. 714; Government Letter regarding Defendant's PSR Objections ("Gov't Ltr.") at 1, ECF No. 710. Central to GD's tenets is the use of violence to retaliate against perceived slights to the gang or to enhance the status of

1

members within the gang. PSR ¶ 11. One of GD's Brooklyn-based sets, or neighborhood-based subgroups, is the No Love City ("NLC") set, which is based mainly around Newkirk and Flatbush Avenues. *Id.*

In November of 2020, Defendant, along with others, participated in shootings targeting rival gang members. PSR ¶ 13. The Government asserts that, even prior to these shootings, Defendant "was captured on surveillance footage pulling out a firearm in NLC territory in Flatbush, Brooklyn," apparently "in response to a perceived threat that proved to be a false alarm." Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 718. The first two shootings, both of which were carefully orchestrated drive by shootings, took place in Canarsie, Brooklyn on November 7, 2020. PSR ¶ 21. GD arranged to have three cars participate in the shooting: one to carry the shooters, and two to act as strategic decoys. *Id.* ¶ 22. Decoys were employed to slow down the police or draw their attention away from the shooters in the event police interfered and sought to protect human life. *Id.* The convoy drove from Flatbush, Brooklyn, which is NLC territory, to Canarsie, Brooklyn, which is rival gang territory. *Id.* Upon arrival in Canarsie, the convoy drove past a crowd of people and at least two occupants of the shooter car opened fire. *Id.* No one was injured in this shooting. *Id.* Later that same day, the convoy returned to Canarsie and at least three individuals in the shooter car again opened fire into a crowd of people, non-fatally wounding two of those people. *Id.* ¶ 23. For both shootings, Defendant was driving the shooter car. *Id.* ¶ 35; Gov't Mem. at 2.

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment, which alleges Defendant was an associate of GD. Superseding Indictment ¶¶ 1, 8. According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(l) and 1961(1). *Id.* ¶¶ 4-5.

Defendant was charged with six counts in the Superseding Indictment: Count 10 charges Defendant with conspiracy to murder rival gang members, in violation of NYPL §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 11 and 13 charge Defendant with attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00 and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Count 12 charges Defendant with attempted assault in-aid-of racketeering, in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; Count 14 charges Defendant with assault in-aid-of racketeering, in violation of New York Penal Law §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2; and Count 15 charges Defendant with possessing, brandishing and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(l)(A)(i), 924(c)(l)(A)(ii), 924(c)(1)(A)(iii), and 2. Superseding Indictment ¶¶ 24-34. The Superseding Indictment also contains a criminal forfeiture allegation as to all counts. *Id.* ¶¶ 44-45.

On August 10, 2021, Defendant was arrested in his home by FBI agents without incident. *Id.* ¶ 33.

On November 18, 2022, Defendant was convicted on all his charged counts, except for Count 11. *See* Jury Verdict at 1-5.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

##### 1. Family and Personal Background

Defendant was born on May 16, 1989 in Brooklyn, New York to Collette Battice and Quincy Jackson.  PSR ¶ 91.  Defendant reports currently having a good relationship with his mother, father, and stepmother.  *Id.*  Defendant's father is currently imprisoned in Maryland serving a 40-year sentence for murder.  *Id.*.  Defendant's parents are both reportedly aware of the instant offense and remain supportive.  *Id.*  Defendant has three maternal half-siblings and two paternal half-siblings, each of whom are aware of the instant offense and remain supportive of Defendant.  *Id.* ¶ 92.

Defendant had a difficult childhood.  His mother abandoned him at the hospital after he was born, and after some time, his father took custody of Defendant.  *Id.* ¶ 91; *see also* PSR Addendum at 3; Def. Mem. at 2-3.  Defendant reported being raised by his father, his

4

stepmother, and other family members and individuals associated with Defendant's family. PSR ¶ 93. While Defendant attended private school and generally lived without wants or needs, Defendant reported a history of horrific abuse. PSR ¶ 93; *see also* Def. Mem. at 3-4. In response to this abuse, Defendant ran away from home numerous times throughout his childhood and adolescence. PSR ¶ 93; *see also* Def. Mem. at 4. Between the ages of 11 and 13, Defendant was placed in juvenile detention programs for minor offenses, including the—now closed— Spofford Juvenile Detention Center. PSR ¶ 9. Defendant reported that he suffered abuse while at Spofford, and defense counsel details Spofford's infamously terrible conditions and stories of abuse before New York City shut down that notorious center. PSR ¶ 93; Def. Mem. at 5-6. Defense counsel reports after Defendant was released from Spofford, he lived largely as a vagrant, sleeping in a mix of parks, hospitals, and the homes of his friends or parents. Def. Mem. at 6. When Defendant was 13, he was placed in another juvenile detention facility. PSR ¶ 93; *see generally* Def. Mem. at 5, 7 (indicating Defendant spent time in the Spofford, Tryon, and Edwin Gould juvenile detention facilities). Thereafter, Defendant was taken care of by his father, stepmother, and "aunt" until approximately 2017. PSR ¶ 93.

Defendant has never been married and has no children. PSR ¶ 95. In 2020, Defendant met and began a relationship with a woman who is aware of the instant offense and, as of the writing of the PSR, remained supportive of Defendant. *Id.*

2.   Educational and Employment History

Defendant attended Middle School 61 Dr. Gladstone H. Atwell, a middle school in Brooklyn, New York, from which he was expelled for truancy and fighting. PSR ¶ 116. Between the ages of 11 and 13, Defendant took vocational programs through the juvenile detention centers and at the Youth Leadership Academy's Boot Camp in approximately 2003

and 2004. *Id.* ¶ 114. Defendant attended William E. Grady High School in Brooklyn from September to June 2005. *Id.* ¶ 113. Defendant was discharged to the Tyron Detention Center for more education in the 10th grade, where, in 2005, he received both his GED and a certificate in small engines and floor covering. *Id.* ¶¶ 113-14, 117. Defendant attended New York City Technical College in Brooklyn for a few weeks in 2006, but he did not graduate. *Id.* ¶ 112.

Defendant reported working for a Brooklyn-based moving company between 2012 and 2013, *id.* ¶ 120, and defense counsel asserts Defendant also worked in construction around this time, Def. Mem. at 8. From approximately 2016 to 2017, Defendant worked for a cleaning company in Brooklyn, New York. *Id.* ¶ 119. Defendant further reported that, from May to August of 2021, he had a 51% ownership of a vehicle wrapping business in Georgia. *Id.* ¶ 118. Defendant was the primary source of labor for the business, while his business partner worked on other business operations. *Id.* This business has closed since Defendant's arrest, and Defendant did not file taxes for this business. *Id.* When Defendant was unemployed, he received financial support from his family, friends, and government assistance programs. *Id.* ¶ 121.

      3.    Prior Convictions

Defendant has a lengthy criminal history. In addition to one juvenile adjudication in 2003, *id.* ¶ 77, Defendant has numerous prior adult convictions, including: two convictions for Robbery in the First Degree in 2007, *id.* ¶ 78, felony convictions for attempted grand larceny and felony eluding in 2015, *id.* ¶ 79, a felony conviction of possessing an access device knowing counterfeit and a misdemeanor conviction for providing false identification to a law enforcement officer in 2016, *id.* ¶ 80, an infraction for driving while intoxicated in 2017, *id.* ¶ 81, and felony convictions for conspiracy to manufacture and utter counterfeit obligations of the United States and for false statements in 2018, *id.* ¶ 82.

Defendant was on supervised release for his 2018 convictions when he was arrested for the instant offense. *Id.* Defendant's Probation Officer in the Southern District of Illinois requested that Court revoke Defendant's term of supervised release and issue a warrant in light of Defendant's conviction in the instant case and failure to update his address. *Id.* Indeed, Defendant's Probation Officer asserts that Defendant attempted to deliberately mislead her during Defendant's supervision regarding his place of residence. *Id.*; *see also id.* ¶ 94. The warrant was issued and is still active in the pending Violation of Supervised Release case. *Id.* ¶ 82.

Since being detained at the Metropolitan Detention Center ("MDC") in relation to the instant offense, Defendant has had two disciplinary infractions for assaulting with serious injury and possessing a dangerous weapon. *Id.* ¶ 97.

4.      Physical and Mental Health

Defendant reports that he is currently prescribed medication for certain physical ailments. PSR Addendum at 4. Defendant reports having been hospitalized for two days after suffering a concussion playing football in 1996. PSR ¶ 101. Defendant reported being shot twice: once in the right knee at a party in 2006, and once on his left hip after he was the victim of an attempted robbery in 2013. *Id.* ¶ 102. While under the custody of the New York State Department of Corrections in 2010, Defendant was stabbed with a knife. *Id.* ¶ 103. Defendant did not seek medical treatment for his gunshot or stab wounds. *Id.* ¶¶ 102, 103.

As for Defendant's mental health, he denied suffering from any mental health issues in the past. *Id.* ¶ 105. However, Defendant reported an interest in speaking with someone about his current mental health and would be open to receiving mental health advisory treatment in the future. *Id.*

7

5.      Substance Abuse

Defendant reported that after beginning to drink alcohol with friends in high school, he began consuming alcohol on a daily basis. *Id.* ¶ 106.  While Defendant has not consumed alcohol since 2020, Defendant is open to receiving treatment for alcohol dependency. *Id.* Defendant further reported some prior recreational drug use. *Id.* ¶¶ 107-08.  In approximately 2012, 2013, and 2015, Defendant participated in three substance abuse assessments as part of his parole. *Id.* ¶ 109.  Defendant also reported attending an outpatient drug and alcohol treatment program in 2012. *Id.* ¶ 110.

6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B.      The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved participation in two different shootings.  While Defendant and other individuals connected to GD were purportedly targeting rival gang members, they opened fire into crowds of people, shooting indiscriminately.  In both November 7, 2020 drive-by shootings, Defendant was driving the

8

shooter car. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

## C.   The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of five counts of the Superseding Indictment: Count 10, conspiracy to murder rival gang members; Count 12, attempted assault with a dangerous weapon in-aid-of racketeering; Count 13, attempted murder in-aid-of racketeering; Count 14, assault with a dangerous weapon in-aid-of-racketeering; and Count 15, possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). *See* Jury Verdict at 1-5.

For Counts 10 and 13, Defendant faces a maximum term of imprisonment of ten years and no minimum term of imprisonment. 18 U.S.C. § 1959(a)(5). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

For Count 12, Defendant faces a maximum term of imprisonment of three years and no minimum term of imprisonment. 18 U.S.C. § 1959(a)(6). Defendant also faces a maximum term of supervised release of one year. 18 U.S.C. § 3583(b)(3). If a condition of release is violated, Defendant may be sentenced to up to one year without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e).

For Count 14, Defendant faces a maximum term of imprisonment of twenty years and no minimum term of imprisonment. 18 U.S.C. § 1959(a)(3). Defendant also faces a maximum term

of supervised release of three years.  18 U.S.C. § 3583(b)(2).  If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision.  18 U.S.C. § 3583(e).

For Count 15, Defendant faces a minimum term of imprisonment of ten years and a maximum of life.  18 U.S.C. § 924(c)(1)(A)(iii); *United States v. Johnson*, 507 F.3d 793, 798-99 (2d Cir. 2007).  Defendant also faces a maximum of five years supervised release.  18 U.S.C. § 3583(b)(1).  If a condition of release is violated, Defendant may be sentenced to up to five years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision.  18 U.S.C. §§ 3583(b) and (e).

Defendant is ineligible for probation on all counts.  18 U.S.C. §§ 3561(a)(2), 3561(a)(3), and 924(c)(1)(D)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties.  Defendant faces a maximum fine of $250,000.00 on each count pursuant to 18 U.S.C. § 3571(b).  However, Defendant's financial profile indicates he is unable to pay a fine.  PSR ¶ 124.  The Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A), which I am imposing in this case. Defendant's counts of conviction are subject to forfeiture allegations.  *See* Superseding Indictment ¶¶ 44-45.  Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution in this case.  However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families.  PSR ¶ 138.  Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified.  The Court reserves its right

10

pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### D.    The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The parties disagree on Defendant's total offense level. This disagreement stems from a dispute over whether an attempted murder cross-reference should apply to Counts 10 and 12. The parties agree on all other portions of Defendant's Guidelines calculations.

Counts 10 and 12:

Pursuant to U.S.S.G. §3D1.2(b), Count 10, charging conspiracy to murder rival gang members, in violation of 18 U.S.C. § 1959(a)(5), and Count 12, charging attempted assault with a dangerous weapon in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(6), are grouped because the offenses involved a victim and two or more acts constituting a common scheme. Pursuant to U.S.S.G. §3D1.2, no other counts can be grouped with Counts 10 and 12.

Probation and the Government maintain that the applicable Guideline provision for violations of 18 U.S.C. § 1959(a) is U.S.S.G. §2E1.3, which provides a base offense level of the greater of 12 or the offense level applicable to the underlying crime. Probation and the Government assert that the underlying crime for Counts 10 and 12 is attempted murder, and the Court should therefore cross-reference to U.S.S.G. §2A2.1(a)(1). The Government "submits that the evidence at trial supports a finding by at least a preponderance of the evidence that the first November 7 shooting was an attempted first degree murder." Gov't Ltr. re Def.'s PSR

11

Objections at 1, ECF No. 710. The Government asserts that not only can the Court consider acquitted conduct—i.e., Defendant's acquittal on Count 11 for attempted murder in-aid-of racketeering—but can further find the requisite intent to kill on review of surveillance video. *Id.* at 1-2 (citing *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005) and *United States v. Stroman*, 498 F. App'x 67, 70 (2d Cir. 2012), respectively). Probation agreed with the Government. ECF No. 715, at 2-3. Therefore, applying the attempted murder cross-reference, the base offense level for Counts 10 and 12 (violations of 18 U.S.C. §§ 1959(a)(6) and (a)(5), respectively) is 33. U.S.S.G. §2A2.1(a)(1) (directing an offense level of 33 "if the object of the offense would have constituted first degree murder").

Defense counsel objects to Probation and the Government's cross reference to U.S.S.G. §2A2.1(a)(1)—the attempted murder cross-reference—on the grounds that there was no evidence supporting an attempted murder charge, specifically no evidence supporting that Defendant acted with a specific intent to kill someone (or to assist someone in attempting to kill). Ex. K to Def. Mem. at 44-45. Defense counsel asserts there is simply inadequate evidence for the Court to make its independent factual finding that Defendant intended to kill someone.[1] *Id.* As such, defense counsel asserts that the applicable Guideline section is the aggravated assault section, §2A2.2. However, defense counsel does not provide proposed Guidelines calculations.

Counts 13 and 14:

---

[1] Defense counsel's objections relate to the PSR paragraphs concerning Counts 10 and 12. Ex. K to Def. Mem. at 44-45, ECF No. 714. Defendant was acquitted of an attempted murder in-aid-of racketeering charge related to the first November 7 shooting (Count 11), but was convicted of attempted assault with a dangerous weapon in-aid-of racketeering related to that shooting (Count 12). *See* ECF No. 533; ECF No. 51 at 10-11. While defense counsel asserts that the Avenue L surveillance video could not support a finding of intent to kill, Defendant was convicted of attempted murder in-aid-of racketeering and assault with a dangerous weapon in-aid-of racketeering regarding the Avenue L shooting. Furthermore, the shooting charged in Count 12 was at a different location from the Avenue L Shooting. *See* ECF No. 51 ¶ 29 (noting attempted assault took place "in the vicinity of 960 East 81st Street, Brooklyn, New York").

Pursuant to U.S.S.G. §3D1.2(c), Count 13, charging attempted murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5), and Count 14, charging assault with a dangerous weapon in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(3), are grouped because one of the counts—the attempted murder in-aid-of racketeering count—is conduct "that is treated as a specific offense characteristic in, or other adjustment to, the Guideline applicable to" the assault with a dangerous weapon in-aid-of racketeering count. *See* U.S.S.G. §3D1.2(c). Pursuant to U.S.S.G. §3D1.2, no other counts can be grouped with Counts 13 and 14. The applicable Guideline provision for violations of 18 U.S.C. § 1959(a) is U.S.S.G. §2E1.3, which provides a base offense level of the greater of 12 or the offense level applicable to the underlying crime. Since the underlying crime for both Counts 13 and 14 (violations of 18 U.S.C. §§ 1959(a)(5) and (a)(3), respectively) is attempted murder, the base offense level is 33. U.S.S.G. §2A2.1(a)(1) (directing an offense level of 33 "if the object of the offense would have constituted first degree murder").

Count 15:

The applicable Guideline for violations of 18 U.S.C. § 924(c)(1)(A)(iii) is U.S.S.G. §2K2.4, which provides that the Guidelines sentence is the statutory mandatory minimum. U.S.S.G. §2K2.4(b). The mandatory minimum for violations of 18 U.S.C. § 924(c)(1)(A)(iii) is 10 years, or 120 months. Pursuant to Note 2(A) to U.S.S.G. §2K2.4, imprisonment imposed for this offense must run consecutively to any other term of imprisonment.

Under the Multiple Count Analysis and based on Probation and the Government calculating that the two groups in this case each have the same offense level—33—each of those groups count for one unit. The total number of units is therefore 2. Count 15 is not included in

13

the multi-count analysis pursuant to U.S.S.G. §2K2.4(b).  This brings the combined adjusted offense level under Probation and the Government's calculations to 35.

Defense counsel objects to Probation's Guidelines calculations, but did not provide an alternate calculation.  Defendant has a criminal history score of 11.  PSR Addendum at 5. Therefore, under the sentencing table in U.S.S.G. Chapter 5 Part A, Defendant is appropriately in criminal history category V.  All parties agree that this is the correct criminal history category. PSR Addendum at 5; Gov't Mem. at 5; Def. Mem. at 1.

Under the Government and Probation's calculations, a criminal history category of V and a total offense level of 35 establish a recommended Guidelines range of between 262 and 327 months of imprisonment.  U.S.S.G. §5A. *see also* PSR ¶ 127, Gov't Mem. at 5.  Because an additional 120 months must be added for Count 15, which has a mandatory minimum of ten years that must run consecutively, the effective Guidelines range based on the Government and Probation's calculations is between 382 to 447 months.

The Court finds, by a preponderance of the trial evidence, that Defendant acted with a specific intent to kill to support Counts 10 and 12.  As described in, *supra* Section I, Defendant drove the shooter car in a three-car convoy—so designed to allow the shooters to escape—to rival gang territory.  Surveillance video admitted at trial shows that the shooter car—again, driven by Defendant—pulled up to a car behind which young men were standing and slowed down.  *See* GX 6030, file name 1606275938247_frontporch_avi; Tr. 1066-69.  Once the car slowed down, individuals inside the car opened fire.  *Id.*  The shooter car then sped off.  *See* GX 6030, file name 1606275938247_frontporch_avi.  This, combined with further evidence supporting both the motivations for these shootings and Defendant's participation therein, shows Defendant acted with a specific intent to kill by a preponderance of the evidence.  Therefore, the

14

Court rejects defense counsel's objections and adopts the Government and Probation's calculations for Counts 10 and 12 as well as their total Guidelines calculations.

The parties' recommendations as to an appropriate sentence vary. Probation recommends a below-Guidelines sentence of 300 months of imprisonment; that this term of imprisonment run consecutive to any sentence on his pending violation of supervised release charge; and three years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 604-1. Probation also recommends payment of the mandatory $500.00 special assessment. *Id.* Probation does not recommend the Court impose a fine, as it does not appear Defendant has the ability to pay. *Id.* at 3. Probation is not recommending drug treatment as a special condition of supervised release, but would monitor Defendant for drug use. *Id.* at 2. Probation notes that the Court may recommend Defendant participate in drug treatment while incarcerated. *Id.* Probation's sentencing recommendation is predicated on the combination of (1) the extremely serious nature of Defendant's conduct, (2) Defendant's criminal history, and (3) Defendant's difficult childhood, which Probation believes the Court should take into particular account in sentencing this Defendant. *Id.* at 3.[2]

Defense counsel requests a below-Guidelines sentence of 240 months. Def. Mem. at 1. In making its request, defense counsel emphasizes: Defendant's difficult childhood, particularly the abuse he suffered and his mother's abandonment; Defendant's lack of membership in GD, particularly when compared to his co-Defendants; Defendant's attempts to become a law-abiding citizen prior to the instant offense; Defendant's remorse and regret for his conduct; and

---

[2] Probation notes that an upward departure under U.S.S.G. §5K2.0 may be warranted in light of the second November 7, 2020 shooting creating a substantial risk of death or serious bodily injury to John Doe #4 and John Doe #5. PSR ¶ 141. Defense counsel objects to the application of this section, and the Government, while rejecting defense counsel's objection, noted that it would not be seeking an upward departure. *See* PSR Addendum at 4.

Defendant's recent act to protect a female correctional officer from an attack at the MDC, and his commendation for the same. *Id.*; *see also id.* at 11-15. Defense counsel spends numerous pages of their memorandum discussing the abuses and horrible conditions at the juvenile detention facilities in which Defendant spent time during his youth, including the infamous Spofford detention center. *Id.* at 5-7. Defense counsel further emphasizes the harshness of Defendant's current confinement conditions at the MDC as warranting a variance. *Id.* at 14-15.

Finally, defense counsel argues that Defendant should be sentenced in accordance with the framework used for those co-Defendants who pled guilty rather than going to trial—i.e., a framework without the § 924(c) mandatory minimum. *Id.* at 15. Defense counsel asserts that Defendant's conduct was the same as that of his co-Defendants who pled guilty, and as such Defendant's mandatory ten-year minimum acts as an unconstitutional trial penalty. *Id.* Instead, defense counsel recommends applying the general framework applied to co-Defendant Thompson, which when applied to Defendant Battice would result in a Guidelines range of, according to defense counsel, 262 to 327 months—from which defense counsel seeks a downward variance. *Id.* at 15-16.

This Court has read and considered the letters written by Defendant's family members, friends, and supporters. Exs. A-H, L of Def. Mem. These letters describe Defendant as a loving and committed sibling, cousin, and friend; emphasize that Defendant has matured; and discuss his difficult upbringing. *Id.* The Court appreciates what Defendant's advocates have said on his behalf. The Court has further reviewed and considered Defendant's letters to his parole officer, Ex. J of Def. Mem., and a record from William E. Grady Technical High School, Ex. I of Def. Mem. The Court has also read and considered Defendant's recently submitted letter to the Court. Defendant's Letter, ECF No. 724 at 3-13.

The Government recommends a sentence of 382 months, which is the bottom of the Guidelines sentencing range. Gov't Mem. at 5. Such a sentence is warranted, the Government argues, in light of the extreme seriousness of the instant offense. *Id.* "By serving as the driver for two separate shootings, the defendant played a critical role in a premeditated and calculated effort to murder random individuals for no purpose other than defending GD's honor," writes the Government. *Id.* The Government further maintains that "regardless of whether the Defendant acted solely as the driver, or as both a driver and shooter," Defendant "had access to a firearm and was willing to use it in defense of the gang," and that "it is only as a result of the miracle of the shooters' bad aim that no one was killed in the subsequent drive-by shootings." *Id.* The Government further argues that such a sentence is necessary to effectuate both general and specific deterrence and takes into account Defendant's history and characteristics, particularly his lengthy criminal history. *Id.* at 6. The Government rejects defense counsel's arguments regarding Defendant's purported trial penalty. *Id.* The Government notes that Defendant "chose to proceed to trial knowing exactly what charges he was facing, including the potential of being convicted of Count 15 and its accompanying 120-month mandatory minimum sentence," maintaining that "[t]he fact that the defendant put the government to its burden does not now create a basis for the defendant to argue for a lower sentence 'proportionate' to those of co-defendants who accepted responsibility pursuant to plea agreements in advance of trial." *Id.* Further, the Government asserts that Defendant's "Guidelines calculations without the mandatory minimum would in no way reflect the use of firearms during two drive-by shootings." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.    Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation points the Court to U.S.S.G. §5G1.3(d) (Policy Statement), which allows the Court to impose a sentence for the instant offense to run concurrently, partially concurrently, or consecutively to any undischarged term of imprisonment. The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.    The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court considers defense counsel's arguments regarding receiving a higher sentence than those co-Defendants who chose to plead guilty, thereby acting as a penalty on defendants who pursue their constitutional rights to go to trial. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.    The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 382 months of imprisonment, to run consecutively to any sentence imposed in Defendant's pending violation of supervised release; 3 years of supervised release with both the standard conditions of supervised release and special conditions of supervised release recommended by Probation in this case; and the mandatory $500.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 604, and its Addendum, ECF No. 715, as corrected herein, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

S/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 1, 2024
Brooklyn, New York

19